Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

# UNITED STATES DISTRICT COURT

for the

Northern District of Ohio  ▼

_____ Division

**FILED**

**MAY 26 2021**

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
AKRON

Micheal M Lane

Case No. **5:21 CV 1085**

*(to be filled in by the Clerk's Office)*

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

*Plaintiff(s)*
*(Write the full name of each plaintiff who is filing this complaint.*
*If the names of all the plaintiffs cannot fit in the space above,*
*please write "see attached" in the space and attach an additional*
*page with the full list of names.)*

–v–

S.A. Comunale Inc, Joseph Fowler IV, Amy Hendricks,
Emcor Group Inc, Stephen Comunale In their individual
and professional capacities.

*Defendant(s)*
*(Write the full name of each defendant who is being sued.  If the*
*names of all the defendants cannot fit in the space above, please*
*write "see attached" in the space and attach an additional page*
*with the full list of names.)*

Jury Trial: *(check one)*  ☑Yes  ☐No

**JUDGE PEARSON**

**MAG. JUDGE BURKE**

## COMPLAINT FOR EMPLOYMENT DISCRIMINATION

I.      **The Parties to This Complaint**

   A.      **The Plaintiff(s)**

Provide the information below for each plaintiff named in the complaint.  Attach additional pages if
needed.

| | |
|---|---|
| Name | Micheal Lane |
| Street Address | 1142 Hardesty Blvd |
| City and County | Akron Summit |
| State and Zip Code | Ohio 44320 |
| Telephone Number | 3308152022 |
| E-mail Address | shegetitdone@gmail.com |

   B.      **The Defendant(s)**

Provide the information below for each defendant named in the complaint, whether the defendant is an
individual, a government agency, an organization, or a corporation.  For an individual defendant,
include the person's job or title *(if known)*.  Attach additional pages if needed.

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

Defendant No. 1

| | |
|---|---|
| Name | S.A Comunale Co Inc |
| Job or Title *(if known)* | |
| Street Address | 2900 Newpark Dr |
| City and County | Norton Summit |
| State and Zip Code | Ohio 44203 |
| Telephone Number | (330) 706-3040 |
| E-mail Address *(if known)* | |

Defendant No. 2

| | |
|---|---|
| Name | Joseph R Fowler IV |
| Job or Title *(if known)* | Vice President of Engineering and Operations |
| Street Address | 1702 FOX HOLLOW LN , AKRON 44333- |
| City and County | Akron, Summit |
| State and Zip Code | Ohio 44333 |
| Telephone Number | |
| E-mail Address *(if known)* | |

Defendant No. 3

| | |
|---|---|
| Name | Amy Hendricks |
| Job or Title *(if known)* | Human Resource Manager |
| Street Address | 40395 Jones Rd, Wellington, |
| City and County | Wellington, Lorain |
| State and Zip Code | Ohio 44090 |
| Telephone Number | |
| E-mail Address *(if known)* | |

Defendant No. 4

| | |
|---|---|
| Name | Emcor Group Inc |
| Job or Title *(if known)* | |
| Street Address | 301 Merritt Seven , CT 06851 |
| City and County | Norwalk Fairfield |
| State and Zip Code | CT 06851 |
| Telephone Number | |
| E-mail Address *(if known)* | |

**C.      Place of Employment**

The address at which I sought employment or was employed by the defendant(s) is

| | |
|---|---|
| Name | S.A Comunale Co |
| Street Address | 2900 Newpark Dr |
| City and County | Norton Summit |
| State and Zip Code | Ohio 44203 |
| Telephone Number | (330) 706-3040 |

## II.      Basis for Jurisdiction

This action is brought for discrimination in employment pursuant to *(check all that apply)*:

☑      Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (race, color, gender, religion, national origin).

*(Note:  In order to bring suit in federal district court under Title VII, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☐      Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 to 634.

*(Note:  In order to bring suit in federal district court under the Age Discrimination in Employment Act, you must first file a charge with the Equal Employment Opportunity Commission.)*

☑      Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 12117.

*(Note:  In order to bring suit in federal district court under the Americans with Disabilities Act, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☑      Other federal law *(specify the federal law)*:
Equal Pay Act

☑      Relevant state law *(specify, if known)*:
Section 4112.02 I Unlawful discriminatory practices
Ohio revised law

☐      Relevant city or county law *(specify, if known)*:

## III.   Statement of Claim

Write a short and plain statement of the claim.  Do not make legal arguments.  State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought.  State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct.  If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph.  Attach additional pages if needed.

A.   The discriminatory conduct of which I complain in this action includes *(check all that apply)*:

- ☐ Failure to hire me.
- ☑ Termination of my employment.
- ☑ Failure to promote me.
- ☑ Failure to accommodate my disability.
- ☑ Unequal terms and conditions of my employment.
- ☑ Retaliation.
- ☑ Other acts *(specify)*:   Equal Pay

   *(Note:  Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court under the federal employment discrimination statutes.)*

B.   It is my best recollection that the alleged discriminatory acts occurred on date(s)
2011 until termination

C.   I believe that defendant(s) *(check one)*:

- ☑ is/are still committing these acts against me.
- ☐ is/are not still committing these acts against me.

D.   Defendant(s) discriminated against me based on my *(check all that apply and explain)*:

- ☑ race
- ☑ color
- ☑ gender/sex
- ☐ religion
- ☐ national origin
- ☐ age *(year of birth)*                    *(only when asserting a claim of age discrimination.)*
- ☑ disability or perceived disability *(specify disability)*
      PTSD

E.   The facts of my case are as follows.  Attach additional pages if needed.

EEOC Form 161 (11/2020)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### DISMISSAL AND NOTICE OF RIGHTS

| To: Micheal M. Lane<br>1142 Hardesty Blvd<br>Akron, OH 44320 | From: Cleveland Field Office<br>EEOC, AJC Fed Bldg<br>1240 E 9th St, Ste 3001<br>Cleveland, OH 44199 |
|---|---|

| | *On behalf of person(s) aggrieved whose identity is*<br>*CONFIDENTIAL (29 CFR §1601.7(a))* |
|---|---|

| EEOC Charge No. | EEOC Representative<br>**Brian R. Shelton,**<br>**Investigator** | Telephone No.<br>**(216) 306-1113** |
|---|---|---|
| **532-2020-01317** | | |

## THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

| | The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC. |
|---|---|
| | Your allegations did not involve a disability as defined by the Americans With Disabilities Act. |
| | The Respondent employs less than the required number of employees or is not otherwise covered by the statutes. |
| | Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge |
| X | The EEOC issues the following determination: The EEOC will not proceed further with its investigation, and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge. |
| | The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge. |
| | Other *(briefly state)* |

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

02/25/2021

*Karen McDonough*

**Karen McDonough,**
**Acting Director**

*(Date Issued)*

| Enclosures(s) | |
|---|---|

cc:

Jeffrey S. Hiller
Littler Mendelson, P.C.
21 East State Street
16th Floor
Columbus, OH 43215

Antria K. Brown
ANTRIA K. BROWM LEGAL AND CONSULTING
SERVICES
421 Fayetteville Street - Suite 1100
Raleigh, NC 27601

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☐ EEOC | 532-2020-01317 |

and EEOC

State or local Agency, if any

| Name (Indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Micheal M. Lane | 3308152022 | 11/8/1978 |

Street Address: 1142 Hardesty Blvd., Akron, OH, 44320  City, State and ZIP Code

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two are named, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Incl. Area Code) |
|---|---|---|
| S.A. COMUNALE CO., INC | More than 500 | 3307063040 |

Street Address: 2900 Newpark Drive, Norto, OH, 44203  City, State and ZIP Code

| Name | No. Employees, Members | Phone No. (Incl. Area Code) |
|---|---|---|
| | | |

Street Address  City, State and ZIP Code

DISCRIMINATION BASED ON (Check appropriate box(es).)

☒ RACE  ☐ COLOR  ☒ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN

☐ RETALIATION  ☐ AGE  ☒ DISABILITY  ☐ GENETIC INFORMATION

☐ OTHER (Specify)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest          Latest

☒ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I. Respondent hired me on December 12, 2007. Respondent discriminated against me due to my disability, race, and sex. Respondent terminated me on December 6, 2019. At the time of my firing, I was the Fleet Logistics Supervisor.

II. Over the course of my employment I have experienced hostility and discrimination from Respondent. This has included Respondent failing to promote me in favor of white employees with less experience, ignoring my reasonable accommodation requests, and maintaining a racist and sexist work environment.

Specifically, I went on FMLA on September 23, 2019 and returned on November 4, 2019. Upon my return, I was awarded the Total Control Performance Award by United Rentals on November 12, 2019. I posted a picture of this personal award on my Facebook page. The purpose of my nonprofit is to encourage women to join the construction profession. I reached out to Respondent and Respondent's parent company to ensure that I was not engaged in any conflicts. I did not hear back. Further, I was not profiting from my organization. On December 6, 2019, Respondent terminated me alleging that I was misappropriating its name and engaging in outside, competing activities. I believe this was pre-text for discriminating against me for leaving on FMLA and having a disability.

III. Pursuant to the Civil Rights Act of 1964, as amended, and the Americans with Disabilities Act of 1990, as amended, and the Family Medical Leave Act 1993, as amended, I believe I experienced an adverse employment action in violation of my rights.

RECEIVED
MAR 10 2020
EEOC-CLFO

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State or Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| 2/29/2020  *Date*  *Micheal M Lane*  *Charging Party Signature* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |

General facts Common to All Counts

1. I was employed from December 12, 2007, until I was wrongfully terminated due to lack of investigation due to incompetence and/or discrimination on December 6, 2019.

2. On 4/24/08, my first leave of absence, I was involved in a bad scooter accident. I flew off the scooter after hitting a pothole. Then flew into telephone pole head-on. Suffering a Traumatic Brain Injury, including suffering memory loss, deformation, amongst other non-visual injuries suffered.

3. After having a miscarriage, also removing an abscess in my body, and an appendectomy on 8/23/11, I started FMLA medical leave again.

4. I was diagnosed with PTSD after the rape/sexual assault on 8/30/11, which occurred while out on FMLA leave.

5. From September of 2011 to January 1, 2019, I self-medicated (using weed and Hennessey cognac only) told MR. FOWLER and Mr. Comunale that my heavy drinking was due to what I had to endure at my toxic Employer S.A. Comunale company during a June meeting that I called.

6. In May of 2014, I was drinking with old friends; someone slipped some ecstasy in one of the bottles of Hennessey I was drinking out of, and the following day I reported to work under the influence.

7. I was taken to Summa for alcohol and drug testing the results came back positive. The person that drove me was Gordan Thomas, my trainee that had ties with Mr. Fowler and Mr. Comunale. I presume he was hired to spy and/or report back anything I said or did back to MR. FOWLER. For example, MR. FOWLER would ask Gordan for confirmation If I smelled like alcohol. One day I used some hand sanitizer before a meeting, and later, Mr. Fowler asks Gordan if he had smelled alcohol on me.

General facts Common to All Counts

8. May of 2014 while out on working leave. I did work while utilizing EAP and other benefits awarded to Me by SAC working from home; someone would deliver anything I need from the office.

9. Early June, I met with Mr. Fowler and Joe Kopper at Primo's Deli to discuss the next options, where I informed them I was going to North Carolina for Peace and therapy.

10. Completed the Pictionary 1st equipment edition 2014 Invoiced and PO paid by check to My company Micheals Mobile oil LLC also paid in gift cards for 2nd edition.

11. September 23, 2019 final Fmla leave for Anxiety, PTSD, and mental toll. When working in an environment where everyone is different from you either by race or sex and/or both, it takes a toll on you mentally.

12.   It can take a toll on your not being able to express yourself when you don't have anyone that looks like you in the conference room or the office. Code-switching.

13. My organization failed to Advocate for me when I bought it to their attention time after time, Vice president after Vice president human resources after human resources all under the same President who seemed to be blind to the whole situation.

14. Mr. Fowler and Ms. Hendricks had a problem with black people; they did not know how to co-exist because they have never really been around black folk and only know what they see on tv and read in the news.

15. The broken part after the owner's kids' departure, the kids' best friend was given the Vice President position over multiple departments and was a poor leader to my kind. Poor leader, period. How does your Vice president not reward his top talent? Instead was jealous of my black girl magic. I rebranded the entire equipment and transportation department and never got

any acknowledgment. We had a meeting about this me and Mr. Fowler week of November 4, 2019.

16. It was a hostile work environment towards me, not the other women, and maybe it was because I'm black, and Mr. Fowler doesn't know much about black folk since his job was given to him.

17. I had to work as if I was five different people in on a daily basis. But Nick could just be Nick white males didn't have to code switch.

18. They assume me to have an attitude, be loud, aggressive, and combative because I'm black. But Michelle Metz has a resting bitch face and could just be one person because she is white.

19. Imagine your Vice president not communicating with you but always has a better way that makes no sense logically but numbers-wise; it's a great idea in theory. He would never admit that he was wrong, or his calculation was off, which kept me having to explain his errors to others, from truck loaders to the President. Mr. Fowler would never take accountability for his actions.

20. I can probably count on one hand how many times we have, ha ha hee hee, but he was always joking with anyone, white male or female. But you never see him interacting with the black employees unless he is giving or getting an answer that he needs. But never to boost up or say good job but quick to have a meeting with human resources. But he has no problem connecting with anyone that is white.

21. He gets to know his white employees; Mr. Fowler asks them about their days and lives. In 11 years, the things that I would have to tell him; are due to professional reasons but are personal because of my disability. Timid around women and black people is not good leadership.

22. Everything I did was noticed in the negative because I'm black, disabled and I'm in a protected class. So even when I asked for FMLA the final time I was told that it all had to be taken at once. That it couldn't be taken intermittently but that is not what the form wh-380-e number 7 answer states.

General facts Common to All Counts

23. Mr. Fowler would deliberately keep me out of the loop and change the schedule, which caused problems for me mentally, which affected my ability to do my job. He would always have an excuse, and him being my Boss and Vice President, I would vent to human resources nothing would be done, by Mike Moldvay, CFO and head of Amy Hendricks, now human resources manager.  During a meeting with Amy Hendricks, she even said to me It's MR. FOWLER, he's a Vice president; nothing's going to be done.

24. My breaking point was when the white garage guy hit me with the welding cart, being a hotheaded ass in front of his supervisor Gordan Thomas who did nothing.  I did inform human resources and My Vice President of the incident and mentioned that it was unacceptable that he did not correct his employee.

25. The cover-up for the White Male drug addict (management covered up) until the pictures taken got released. Heroin overdose in the men's bathroom they took him home. His friend was the operation manager; he was his 2nd shift supervisor.

26. 40 line fabrication line was a pool of racists: it is always a problem the blacks can't last over there.

27. Treatment of Women in the hanger area just disgusts me. It got to be so bad for the young white girl that used to speak to me and even sometimes cries about her treatment eventually quit.

28. The millennial white men have no respect, managers and vice presidents do nothing. The treatment of black drivers and fab shop employees was reprehensible to say the least. The number of construction/fab site horror stories that involve racist graffiti and/or nooses was often a reality.

29. Lies Lies Lies , I was accused of Black mailing the President of the Company Stephen Comunale that is why I still had at the time my job. It wasn't my fault Stephen Comunale said he would buy my house.

General facts Common to All Counts

30. No communication MR. Fowler would not respond to my emails, text, or vacation request. For example, I would have to always reach out to his administrative assistant about the status of my request—something I made very aware to human resources on numerous occasions. On one occasion, Mrs. Hendricks inquired about the form that we used to request Vacation time. I would generally request all my time at one time to correspond with holidays. I would ask others if they had issues getting answers.

31. No actions were taken regarding the issues I raised concerning the hostile working environments within the office and the field, gender discrimination, Sexist behavior during the and Mr. Fowlers meeting on November 5, 2019, with Mr. Fowler. Instead, I was called into a meeting with Mr. Fowler and Mrs. Hendricks. I was reprimanded instead.

32. There was no advancement for black employees on an equal playing field to white males during my tenure.

33. Undermining my instructions to his employees that I gave directions. The divers and loader would say "JR said" leaving me looking incompetent. This also happened with executive level employees.

34. I was fired because my Vice President and human resources didn't do their job.  We were supposed to have that follow-up, which resulted in wrongfully retaliatory termination due to lack of investigation due to incompetence and/or discrimination.

35. I remember the President saying to me, "you smoke that much weed." I said yeah, I have to, working here.

36. Even with the still dirty urine, months later, I was summoned back to the office by Mr. Comunale, and it was business as usual.

37. Human resources Director Joe Kopper was very supportive during my time with the company before retiring in late 2018. He advocated for me during my entire employment regarding my disability. True HIPPA professional.

General facts Common to All Counts

38. I was accused of theft attempting to charge the company for a personal purchase in the position statement. Not True Mr. Comunale said that he would take care of past due invoice. Ms. Hendricks started this accusation because the Company bought me my house and she said that I owed the Company(Stephen Comunale).

39. In September of 2019, Dr. Nick wrote me an order for medical marijuana.

40. Early Gordan (was the personal chauffeur to Stephen Comunale and Joseph Fowler) that was now my assistant but not my assistant; he reported to the Vice President is now promoted to Garage Supervisor at $23 per hour with the option of unlimited overtime, yet I never got a replacement person.

41. He never gave me authority over anyone. I was the fleet logistics supervisor, which was just in name  because the President gave me the promotion a few years back, not my boss, after being Equipment coordinator of a 250 million dollar company.

42. A couple of months later, I call a meeting after bonus time, of course, with the President and My Vice President, which occurred on or about June 4, 2019.

43. After that meeting, I had a meeting with human resources on or about June 6, 2019

44. Nothing changes over the next six months except that I was fired, and nothing was done about the hostility and toxic environment; it just got worst.

45. I go to my Dr., and we talk about me taking some time off due to stress and anxiety. I tell him I'm going to keep working on trying to handle it. Give me a script for Wellbutrin.

46. My PTSD gets working on me, really hard every year in August, miscarriage on my sister's birthday, and rape on my mom's birthday. I go to Hr and request FMLA paperwork.

47. I go back to the Dr with the FMLA paperwork; we talk about how work is affecting my health; he requested I take 4-6 weeks off with a follow-up.

48. I get FLMA papers signed and take six weeks away from the toxicity working two of those weeks. I also attend two industry-related conferences that the company paid for everything. AEMP Equipment Shift I was Co-chair of the Technology Committee and Smartsheet Engage 19 because my Emcor license allowed me to attend.

49. Not once did Mr. Fowler call to check in on my progress during my time off for FMLA.

50. Was I paid while on FLMA from Short term Disability and/or as an intermitted FLMA leave employee working during leave.

51. But he was in constant contact with two others that took FMLA leave before me, one white male and his admin white female.

52. This retaliation was because of my type of disability, one that could not be seen, and the fact that I am a black woman.

53. I remember a black driver telling me that he had it was quitting. Later to find out the President disrespected him because of his race.

54. 10/25/19 Junior Achievement while on FMLA leave, I was asked to speak to the kids about my Career Path at Barberton High School.

55. I signed nothing permitting Junior Achievement to use any name, not mine or S.A. Comunale. It was a last-minute decision to go; my flight had landed from KC late, and the event was at 8 am.

56. During the week of November 11, 2019, United Rentals Executives Gordon McDonald and Greg Christensen Presented me with a Belt Buckle as an Award with my name Michael Lane and S.A. Comunale at the total Control

and innovation Conference. United Rentals is one of the world's largest rental companies and awarded me as a Top User 1 out of 12 in the world.

57. Frank Branca, Emcor National account manager United said I was number 1 in the country of total control usage during a meeting at S.A Comunale in the Main Conference room when senior Comunale leadership was in attendance, including but not limited to Joseph Fowler and Stephen Comunale.

58. They forced congrats out of their mouths. They didn't even want to see the Award to see that my name was engraved. To bust my bubble, I found out that Mr. Fowler said the company won the Award during my termination meeting. Something never mentioned to me. Collectively the Comunale company was looking for a reason to get rid of me because I was Black, disable, and/ or a woman, and complaining about not being paid for the roles I played.

59. My transition into equipment and transportation took my status from a Fab shop employee who was just a worker bee into someone that worked daily with the executive management team through S.A. Comunale, Emcor group executives such as Robert All and Joseph Burns. Smartsheet President Mark Mader, United rentals former CEO Michael Kneeland and Matt Flannery and a host of others Donte' Shannon CEO of the Association of Equipment Management Professionals.

60. Mr. Fowler said the company paid for everything; not true I didn't even submit all my expenses. United paid for everything except my flight, but I didn't ask, including my room, an extra day at the JW San Antonio, transportation, and food. I submitted only one receipt, which was for the flight

61. Even if they didn't pay, I was going to the event; I booked my flight before he permitted me to go. It was one of his maybe's while I was on FMLA we would discuss at a later time.

62. I didn't know I was getting the Award when Vice President and human resources discussed my Facebook business page and website. On 11/6/19, two days after I get back from FMLA.

63. I sent the Junior achievement screenshot to President Stephen Comunale. I get a read receipt showing me he opened the email. I sent it to him and two EMCOR Executives because he asked about what I did when I was out on Monday 11/4 during our weekly private meeting.

64. I was asked to speak about my career, not my Employer, and Genie from JA was interested in my Nonprofit my mom referred her to me. Maybe they didn't want my black self to be heard—black girl Magic.

65. The critical thing to point out is that proof of the meeting conversations would only be on their word. I didn't sign anything, saying we had a meeting, or have I ever been written up in my time there that I can recall.

66. Mr. Fowler told me in front of Mrs. Hendricks to make sure I removed anything images related to Comunale: about which it wasn't while I was traveling, I deleted anything remotely that I could think of the same day.

67. He never had the follow-up, so I just thought he didn't have the time as usual. I never heard anything else until 12/6/19 at 4:27 pm.

68. I received a wrongful termination on the grounds of violating Emcor's code of business conduct and ethics because they were publishing photos of S.A. Comunale equipment marketing material on job sites. Nothing identified with Comunale Name after meeting everything was removed.

69. Any photos taken or pictures were taken because I was hired to create a Pictionary for the Comunale company per Stephen Comunale. A check was issued to my business for my work, so whose property with those photos.

70. The meeting with Mr. Fowler and Amy Hendricks this meeting took place in Mr. Fowler's office on November 6, 2019; just around 10 am I was ambushed.

General facts Common to All Counts

71. I left for the United Rentals Total Control conference as a recipient of the total control award on or about 11/10/2019, which I found out about the award on my day off.

72. I reached out to Amy Mitan, marketing coordinator for S.A. Comunale, who advised me to reach out to Joanne Lindberg, Director of marketing for EMCOR.

73. I didn't get a response back from Joann Lindberg until after a message I shared from United rentals about an Award that I was getting, and she needed to review the press release.

74. I told Mr. Thomas that I was no longer going to Amy, Mr. Fowler, Or SAC; I was going to EMCOR with my subsequent complaint. Not even two weeks later I was terminated with a separation agreement that included a 19,000 special benefit minus 1128.35 for a person purchase Mr. Stephen Comunale said he would pay.

75. I stopped working on my new business advocating for the underrepresented in the Skilled trades occupations after being threatened with a cease and desist from Emcor and Comunales Attorney to my attorney at the time. Early January 2020 during Mike Bloombergs Presidential campaign he stop at the bounce innovation hub in Akron I gave him my business card and we took pictures along with some other state and local leaders including Marco Sommerville, Margo Summerville, Ellene Shapiro, Vernon Sykes, and our Mayor Dan Horrigan whom like the idea of promoting the skilled trade option over college. My motto is College is not for everyone.

76. My claim of race discrimination will be that I was a black woman who had my own business, which was deemed a problem. But Fabrication was what the company did, so why pay white male employees Mike Nemeth, Dan Satterfield, Dave Liggett to do competing work and pay their companies as vendors. My business dealt with the advocation of the underrepresented in the local community. Let's not recruit from the urban areas of Akron. Let's recruit in the rural areas only.

77. Reason for wrongful termination: No employee may use company customers or vendors' names or influence assets, facilities, or material for outside activities. However, it was a fact that the S.A. Comunale employees had to,

while doing their jobs, had to solicit donations from their vendors for the SAC Cancer foundation. I didn't solicit any work for my businesses. My business was to help others.

78. Well, when the second shift supervisor, a white man named Jamie, was found overdosed in the bathroom, and this was reported to the vice president with the picture's management try to cover up the situation until more images arose when he was found passed out on his motorcycle in the parking lot. He later died.

79. Women with company vehicle was a NO-NO, but men got whatever they desired. I took the hand-me-down vehicles. And/ or because I was black and a woman, Mr. Fowler didn't want me to have a vehicle, but Mr. Comunale didn't mind.

80. The DUI's of male drivers was not a big deal, but my NON-DUI was a big deal. Black Male temp employee fired for being hungover. White male employees with alcohol on the breath allowed to work.

81. In a private meeting with award winners UR Total Control Conference - a day before the public ceremony, the award was presented to Micheal Lane with no mention of the S.A. Comunale company.

82. Regarding the Barberton high school junior achievement day attending the event without Communales permission as an adult, I did not need to ask Comunale for permission to attend. An event my mother was also in attendance. I never signed any paperwork acknowledging that I was attending events.

83. If the S.A. Comunale company did their due diligence of an investigation, one simple phone call could've avoided this lawsuit. But their hatred towards other people of color and me is evident. Their failure to attend the event, I was told by Jeanie that the company was also invited to send someone to the JA event.

84. I reached out to Jeanie multiple ways by phone and email to have her remove what Junior achievement posted.

General facts Common to All Counts

85. Not given a timeline for anything discussed between Amy Hendrick and Joseph Fowler in the meeting where I needed to remove Comunale equipment from my www.shegetitdone website.

86. MR. Fowler stated that I could take a look at the stuff while I was traveling to San Antonio for the total control conference. To remove anything that needed to be taken care of, and we would review upon my return. Me not trusting MR. Fowler or Mr. Hendricks motives.

87. I reached out to our marketing person at Comunale, Amy Mitan, who told me to reach out to Joanne, but she would have usually gotten a phone call prior if there was an issue in regards to social media or something outside the lines involving anything that could directly affect marketing whether it be good or bad.

88. I also learned from another employee when she was featured in a newspaper article that found out about EMCOR, and they told her how to address the situation, which was another reason why I reached out to Joann on November 6 and ask if she could take a look at it because I didn't want to violate any company policies.

89. Return to work for Amanda Comunale in the fab office work my way from the inventory clerk to purchasing to equipment coordinator to fleet logistics supervisor. Only in certain circumstances would a woman have a title above coordinator in the black person role of project manager. I was the only black supervisor that I recall during my entire 12 years, but during outside engagements, the President would address me as one of his managers

90. Because I told the President about her husband's Department's poor job, that was grounds for retaliation.

91. During any meeting with human resources in her office wasn't any notetaking going on. More of a continuation of gossip while I would want to vent about the problems that I face.

92. In a meeting, even as far as asking the President how many women were in the field. Not to my surprise, he didn't know or even looked interested in the knowing.

93. The big-box department lead by Steve Hendricks has been known to speak racist comments and sexist discriminatory statements.

94. Because I was black and from what they considered the hood smh, I would get asked by white men and women if I could get them drugs.

95. White employees with drug or alcohol issues were treated differently in the most recent years to black terminations versus two whites getting further assistance.

96. Force a sex assault victim to work with a sexual predator—flagrant disregard for the safety of rape victim or employees that brought their children to work. Sometimes I would have to bring my Godson to the office with me.

97. The treachery of the field is a total tragic story without good understanding the things that I had to hear from the drivers that I dispatched racist taunts and issues faced either due to their race, partners race, and or Children or grandchildren that may be mixed raced.

98. During a meeting with Mr Fowler early 2020 at the request of Stephen Comunale. We talked about my options: he told me I had the option to stay at the same rate that I was working at, take the decrease and go salary losing my overtime options, or find me another job. This is what I got when I asked about being paid equitably.

99. From 2010 - 2019 it was a nothing's going to change toxic environment. Management would often brush me off when I asked to sit down to discuss the hostile and discriminatory issues. Change the topic of conversation if I was granted time, I knew their game; HR and Mr. Fowler would purposely get interrupted. In the form of text messages, intercom interruption, meeting cancellations, and/or never rescheduled meeting.

100.     Working in the hallway where I was subject to constant hostility, sexual exploitation in the bathrooms, cell phones pictures, The disrespect of same-sex relationship harassment intimidation, and toxicity and will be

offensive to a reasonable person to work with standard operating procedure at Comunale. I was the resident therapist and or sounding board lol not snitching policy that black people had.

101. Examples of races activity included or not limited to where blacks parked in the parking lot, terminations for a black employees saying the n-word vs white employees saying the same derogatory term, Constant jokes about the two men from Hawaii being called pineapple pickers, nooses on the forklifts are just a few oh let's not forget Pump my gas.

102. When Asked why I stayed so long it was because of several reason:
   a. No college degree. I don't like school but love learning.
   b. 8 minute drive from everything close to me like home.
   c. Home for lunch everyday.
   d. Never worked in corporate.
   e. Thought that how it was supposed to be Until I sobered up.
   f. Steve gave me almost anything I asked for and I didn't ask for much for example I was having ptsd anxiety issues and he set me up at the Doubletree for a long weekend.
   g. I was making a difference in the community by highlighting the options of Trade school vs college and getting a degree on the company instead of a Loan.

## COUNT I - DISPARATE TREATMENT, HARASSMENT, AND DENIAL OF REASONABLE ACCOMMODATION IN VIOLATION OF THE ADA

103. I am disabled, as defined by the ADA, at all relevant times herein, and/or Defendant regarded I as being disabled.

104. I am a qualified individual as defined by the ADA, due to my disability and/or Defendants' perception that I am disabled.

105. I could perform the essential functions of job duties for Defendant with or without reasonable accommodation.

106. Defendants unlawfully and intentionally discriminated against me based upon my disability and/or because they regarded me as disabled, and acted in bad faith by interfering with, recklessly disregarding, and denying my legal rights when they terminated my employment.

107. My disability and/or Defendants' perception that I'm disabled, was a motivating factor in Defendants' decision to terminating me.

108. Defendants' actions and/or omissions constitute a pattern or practice of discriminatory and retaliatory behavior.

109. As a direct and proximate result of Defendants' actions and/or omissions, I have been deprived of income, as well as other monetary and non-monetary benefits.

110. As a direct and proximate result of the unlawful conduct of Defendants as set forth herein, I have suffered damages which include emotional distress, pain and suffering, past and future wages and benefits, career damage and diminished career potential, mental distress in the form of embarrassment, degradation, and humiliation, increased anxiety, increased difficulty sleeping, loss of enjoyment of life, and other non-pecuniary losses.

111. By failing to take prompt and effective remedial action, Defendants in effect condoned, ratified and/or authorized the harassment of and discrimination against me.

112. As shown by the foregoing, Defendants' conduct was willful, wanton, and malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of me, thus, justifying an award of punitive damages in an amount sufficient to punish Defendant or to deter them and other entities from the conduct in the future.

## COUNT II – DISPARATE TREATMENT AND HARASSMENT BASED ON RACE IN VIOLATION OF TITLE VII

113. I incorporate the allegations contained in the above-stated paragraphs as if fully set forth herein.

114. During my employment with Defendants, I was subjected to different terms and conditions of employment and an ongoing practice and/or pattern of discrimination/disparate treatment and harassment based on my race, African-American, by Defendants.

115. I was subjected to different work requirements than other similarly situated Caucasian employees in regard to the terms and conditions of his employment.

116. My race, African-American, was a motivating factor in Defendants' decision to terminate my employment.

117. Defendants' actions and/or omissions constitute a pattern or practice of discriminatory and retaliatory behavior.

118.     All actions or inactions of or by Defendants occurred by or through their agents, servants, or employees acting within the course and scope of their employment, as set forth herein.

119.     Defendants' actions constitute unlawful employment discrimination against me in violation of Title VII, as alleged herein.

120.     As a direct and proximate result of the unlawful conduct of Defendants as set forth herein, I have suffered damages which include emotional distress, pain and suffering, past and future wages and benefits, career damage and diminished career potential, mental distress in the form of embarrassment, degradation and humiliation, increased anxiety, increased difficulty sleeping, loss of enjoyment of life, and other non-pecuniary losses.

121.     The conduct of Defendants was outrageous and evidences an evil motive or reckless indifference for the rights of I and the rights of others, entitling me to an award of punitive damages.

COUNT III– HOSTILE WORK ENVIRONMENT IN VIOLATION OF TITLE VII

122.     I incorporate the allegations contained in the above-stated paragraphs as though fully set forth herein.

123.     During my employment with Defendants, I was subjected to a hostile and offensive work environment based upon his race, African American, by Defendants' employees, my supervisor Mr. Fowler, President of the company Mr. Comunale, and Human resources manager Ms. Hendricks which constituted a continuing pattern of unwelcome harassment, which I found, and which a reasonable person would find, to be offensive, and which altered the terms, conditions and/or privileges of my employment.

124.     All actions or inactions of or by Defendants occurred by or through their agents, servants, or employees acting within the course and scope of their employment, as set forth herein.

125.     As a direct and proximate result of the unlawful conduct of Defendants as set forth herein, I have suffered damages which include emotional distress, pain and suffering, past and future wages and benefits, career damage and diminished career potential, mental distress in the form of embarrassment, degradation and humiliation, increased anxiety, increased difficulty sleeping, loss of enjoyment of life, and other non-pecuniary losses.

126.     The conduct of Defendants was intentional, malicious, and/or outrageous and evidenced an evil motive or conscious disregard for the

rights of me and other similarly situated, entitling me to an award of punitive damages.

## COUNT IV – DISPARATE TREATMENT AND HARASSMENT BASED ON MY SEX IN VIOLATION OF TITLE VII

127. I incorporate the allegations contained in the above-stated paragraphs as if fully set forth herein.

128. During my employment with Defendants, I was subjected to different terms and conditions of employment and an ongoing practice and/or pattern of discrimination/disparate treatment and harassment based on my Sex, Female, by Defendants.

129. I was subjected to different work requirements than other similarly situated Caucasian employees in regard to the terms and conditions of his employment.

130. My Sex, Female, was a motivating factor in Defendants' decision to terminate my employment.

131. Defendants' actions and/or omissions constitute a pattern or practice of discriminatory and retaliatory behavior.

132. All actions or inactions of or by Defendants occurred by or through their agents, servants, or employees acting within the course and scope of their employment, as set forth herein.

133. Defendants' actions constitute unlawful employment discrimination against me in violation of Title VII, as alleged herein.

134. As a direct and proximate result of the unlawful conduct of Defendants as set forth herein, I have suffered damages which include emotional distress, pain and suffering, past and future wages and benefits, career damage and diminished career potential, mental distress in the form of embarrassment, degradation and humiliation, increased anxiety, increased difficulty sleeping, loss of enjoyment of life, and other non-pecuniary losses.

135. The conduct of Defendants was outrageous and evidences an evil motive or reckless indifference for the rights of I and the rights of others, entitling me to an award of punitive damages.

## COUNT V - RETALIATION IN VIOLATION OF THE ADA

General facts Common to All Counts

136. I hereby re-allege and incorporate by reference the allegations contained in the above-stated paragraphs.

137. I am disabled and/or Defendants regarded me as disabled, as defined by the ADA, at all relevant times herein.

138      I am a member of a protected class because of my disability and/or because I was regarded as being disabled and because I requested accommodation.

139      I complained of and opposed discriminatory/harassment treatment when I requested MLA leave. I was suffering from on-the-job mental trauma causing my medical conditions to exacerbate.

140      I requested reasonable accommodation from Defendants due to my medical condition.

141      As a direct and proximate result of Defendants' actions and/or omissions, I have been deprived of income, including wages and benefits as well as other monetary and nonmonetary benefits.

142      As a direct and proximate result of the unlawful conduct of Defendants as set forth herein, I have suffered damages which include emotional distress, pain and suffering, past and future wages and benefits, career damage and diminished career potential, mental distress in the form of embarrassment, degradation and humiliation, increased anxiety, increased difficulty sleeping, loss of enjoyment of life, and other non-pecuniary losses.

143      By failing to take prompt and effective remedial action, Defendants, in effect condoned, ratified and/or authorized the discrimination against me.

144      As shown by the foregoing, Defendants' conduct was willful, wanton, and malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of me, thus, justifying an award of punitive damages in an amount sufficient to punish Defendant or to deter them and other entities from the conduct in the future.

145      By failing to take prompt and effective remedial action, Defendants, in effect condoned, ratified and/or authorized the discrimination against me.

146      As shown by the foregoing, Defendants' conduct was willful, wanton, and malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of me, thus, justifying an award

of punitive damages in an amount sufficient to punish Defendant or to deter them and other entities from the conduct in the future.


## COUNT VI - RETALIATION IN VIOLATION OF TITLE VII

147. I hereby re-allege and incorporates by reference the allegations contained in the above-stated paragraphs.

148. I am a member of a protected class because of my race, African-American, Sex, and disability.

149. I engaged in protected activity under Title VII by reporting racial harassment to human resources, informing Defendants of inappropriate and harassing conduct.

150. I engaged in protected activity under Title VII by reporting racial harassment to Joseph R Fowler IV, Mike Moldvay, and Amy Hendricks, informing Defendants of inappropriate and harassing conduct.

151. Defendants took adverse actions against me as a result of me engaging in the aforementioned protected activity.

152. For example, after I reported the discriminatory treatment I faced, Defendants called me into a meeting, reprimanding me about items on my website and on my Facebook business page instead of addressing the complaints Mr. Fowler and I spoke of the day Before terminating me and never addressed my complaints.

153. Defendants' actions constitute unlawful employment discrimination against me and are a violation of Title VII. 42 USCA § 2000e et seq., as alleged herein.

154. As a direct and proximate result of the unlawful conduct of Defendants as set forth herein, I have has suffered damages which include emotional distress, pain and suffering, past and future wages and benefits, career damage and diminished career potential, mental distress in the form of embarrassment, degradation and humiliation, increased anxiety, increased difficulty sleeping, loss of enjoyment of life, and other non-pecuniary losses.

155. By failing to take prompt and effective remedial action, Defendants, in effect condoned, ratified and/or authorized the discrimination against me.

156. As shown by the foregoing, Defendants' conduct was willful, wanton, and malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of me, thus, justifying an award of punitive damages in an amount sufficient to punish Defendant or to deter them and other companies from the conduct in the future.

General facts Common to All Counts

Count VII Violations of the Equal Pay Act
All defendants

157.    I hereby re-allege and incorporates by reference the allegations contained in the above-stated paragraphs.

158.    During my employment, Defendants required me to perform the same or substantially the same job position as male employees, requiring equal skill, effort, and responsibility under similar working conditions and paid me a rate of pay, including but not limited to hourly rate plus overtime and yearly presidential bonus, less than such male employees.

159.    During my employment, Defendants required me to perform the roles of multiple people and paid me a rate of pay, including but not limited to hourly rate plus overtime and yearly presidential bonus, less than such various employees.

160.    Defendants engaged in patterns, practices, and/or policies of employment which discriminated against me on the basis of my gender by paying me lesser rate of pay, including but not limited to hourly rate plus overtime and yearly presidential bonus, than that paid to male employees performing the same or substantially similar job duties which require equal skill, effort and responsibility, and under the same working conditions.

161.    As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the Equal Pay Act ("EPA"), Plaintiff has suffered, and harm for which she is entitled to an award of monetary damages and other relief.

162.    Defendants' unlawful and discriminatory actions constitute malicious, willful and wanton violations of the EPA for which Plaintiff is entitled to an award of punitive damages.

See Attachment document entitled Statement of Claims.
Also attached copy of Charge filed with EEOC.

*(Note:  As additional support for the facts of your claim, you may attach to this complaint a copy of your charge filed with the Equal Employment Opportunity Commission, or the charge filed with the relevant state or city human rights division.)*

## IV. Exhaustion of Federal Administrative Remedies

A.  It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission or my Equal Employment Opportunity counselor regarding the defendant's alleged discriminatory conduct on *(date)*

02-29-20

B.  The Equal Employment Opportunity Commission *(check one)*:

☐  has not issued a Notice of Right to Sue letter.

☑  issued a Notice of Right to Sue letter, which I received on *(date)*   02/25/2021   .

*(Note:  Attach a copy of the Notice of Right to Sue letter from the Equal Employment Opportunity Commission to this complaint.)*

C.  Only litigants alleging age discrimination must answer this question.

Since filing my charge of age discrimination with the Equal Employment Opportunity Commission regarding the defendant's alleged discriminatory conduct *(check one)*:

☑  60 days or more have elapsed.

☐  less than 60 days have elapsed.

## V. Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order.  Do not make legal arguments.  Include any basis for claiming that the wrongs alleged are continuing at the present time.  Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts.  Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

Prayer for Relief.

A. A declaratory judgment that the actions, conduct and practices of Defendants complained of herein violate the laws of the United States and the State of Ohio;

B. An award of damages against Defendants, in an amount to be determined at trial, plus interest, to compensate for all non-monetary and/or compensatory damages, including, but not limited to, compensation for Plaintiff's pain and suffering, loss of enjoyment of life, anxiety, stress, stock losses, 401k losses, humiliation, career killer, and emotional distress;

C. ORDER Defendant Employer to institute and carry out policies, practices, and programs which provide equal employment opportunities for individuals with disabilities, and which eradicate the effects of its past and present unlawful employment practices.

D. An award of liquidated damages equal to the amount of Plaintiff's past and future lost wages;

E. An award of punitive damages in an amount to be determined at trial;

F. Prejudgment interest on all amounts due;

G. Post-judgment interest as may be allowed by law;

H. Granted permanent injunction in joining defendant its officers, agents, servants, employees attorney, successors, and all persons in active concert or participation with them from creating, failing to prevent, failure to properly correct offensive, abusive, intimidating, and/or hostile work environments on the basis of race, sex, gender, disability and engaging in any other employment practice that is discriminate on the basis of race, sex, gender, and/or disability.

I. Order defendant to institute and carry our policies practices and programs which provide equal opportunity for African-Americans and which eradicate the facts of its past and present unlawful employment practices.

J. Order defendant to institute and carry our policies practices and/or programs which would assist the underrepresented with legal aid to combat the retaliation.

K. An award of Plaintiff's reasonable attorneys' fees and costs; and

L. Restructuring of Executive team and/or combine with another Mechanical Contractor of the EMCOR Group A Company like Shambaugh.

M. Such other and further relief as the Court may deem just and proper.

See Attached Doc Titled Relief

## VI.     Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.     For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served.  I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:             05/22/2021

Signature of Plaintiff          *Micheal M Lane*

Printed Name of Plaintiff       Micheal M Lane

### B.     For Attorneys

Date of signing:

Signature of Attorney

Printed Name of Attorney

Bar Number

Name of Law Firm

Street Address

State and Zip Code

Telephone Number

E-mail Address